67 Cal.Rptr.3d 893 (2007)
156 Cal.App.4th 1114
The PEOPLE, Plaintiff and Respondent,
v.
Joseph HEBERT, Defendant and Appellant.
No. C054280.
Court of Appeal of California, Third District.
November 13, 2007.
*894 Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, David A. Rhodes and Clayton S. Tanaka, Deputy Attorneys General, for Defendant and Appellant.
RAYE, J.
One spring evening, officers, responded to an uncompleted 911 call from defendant Joseph Hebert's residence.[1] Defendant admitted he had earlier smoked "speed" and told officers his kitchen contained drugs. Two years later, on Christmas Eve, defendant repeatedly made harassing phone calls to a 911 operator, requesting sexual favors and threatening to kill the President. When officers took defendant into custody, they found a small baggie of methamphetamine.
The first incident resulted in a complaint charging defendant with possession of cocaine base, being under the influence of a controlled substance, and possession of drug paraphernalia. (Health and Saf. Code, §§ 11350, 11550, subd. (a), 11364.) Defendant entered a plea of no contest to possession of cocaine base. The trial court granted defendant probation on the condition he complete a Proposition 36 drug treatment program. (Pen.Code, § 1210.1.)
The second incident resulted in an information charging defendant with felony possession of methamphetamine and misuse of a 911 emergency line. (Health & Saf.Code, § 11377, subd. (a); Pen.Code, § 653x.) Defendant entered a negotiated plea of no contest.
After defendant failed to appear, the court sentenced him to three years in state prison. Defendant appeals, arguing he must be allowed to withdraw his plea pursuant to Penal Code section 1192.5. We shall reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
In April 2003 officers were dispatched to defendant's residence in response to an incomplete 911 call. The caller yelled profanities and said he wanted to "get the bitch in his sights." After officers arrived, one of them recognized defendant from a previous encounter. Defendant appeared to be under the influence of narcotics. He admitted smoking speed that afternoon and told officers his kitchen contained drugs. Officers found a tinfoil smoking pipe in defendant's pocket and seized .13 gram of cocaine base.
On Christmas Eve of 2005 officers responded to reports of harassing phone calls to a 911 operator emanating from defendant's residence. In the calls, defendant requested sexual favors from the dispatcher, threatened to kill the President, and claimed to be employed by the California *895 Highway Patrol and the American Consulate. Defendant refused to stop calling 911, even after being advised that his calls were not of an emergency nature. When officers took defendant into custody, they discovered a small baggie containing .97 gram of methamphetamine in his pocket.
In case No. 03FO3671, stemming from the April 2003 incident, a complaint charged defendant with possession of cocaine base, being under the influence of methamphetamine, and possession of drug paraphernalia. Defendant entered a plea of no contest to possession of cocaine base.
The trial court placed defendant on four years' formal probation and ordered him to serve 240 days in the county jail, to be suspended pending successful completion of a Proposition 36 program. Defendant later requested deletion of the Proposition 36 program requirement and was remanded to serve his jail sentence.
Two years later, in case No. 05F11205, an information charged defendant with possession of methamphetamine and misuse of a 911 emergency line. The information also alleged defendant had been convicted of a strike prior under Penal Code sections 667, subdivisions (b) through (i) and 1170.12. The court revoked defendant's probation in case No. 03F03671. The trial court also granted defendant's request to represent himself.
Appearing in propria persona at a hearing on his own motions, defendant announced that he and the district attorney had discussed plea arrangements and he was prepared to enter a plea. Thereafter, the court inquired about the terms of the plea and the prosecutor described the offer. The court then explained the sentencing process, including the necessity of a probation report, whereupon defendant explained that his decision to plead was because of his impending eviction and that he needed to be released from custody. The court asked the prosecutor about defendant's criminal history, after which the following colloquy ensued:
"The Court: Mr. Hebert, I need to know what you're going to do today. [¶] Are you going to enter a plea, or do you want me to hear your motion to compel?
"The Defendant: Well, I would say this, Your Honor: [¶] I would be more than willing to forego, as far as entering the plea, if the district attorney or the People would not oppose an OR in the interrum [sic] of the sentencing, and I
"The Court: That offer was to the People, [¶] ... [¶] ... I could require a Cruz waiver. [¶] ... [¶] All right. Mr. Hebert, here's what I will do, because it's the Judge that has to release you. It's not the prosecutor. [¶] ... [¶] If I release you, following your entry of plea, I would require what is referred to as a Cruz waiver.
"The Defendant: Okay.
"The Court: In other words, I would let you out, if you agree that at sentencing, if you failed to show up, then you go to prison for sixteen months.
"The Defendant: Absolutely, Your Honor. [¶] I would-I was going to say the high term. I would be willing to take the high term.
"The Court: All right. We'll call it three years if you're willing to accept the high term.
"The Defendant: If I am willing to ... this is only based upon the fact that I do not appear at the sentencing?
"The Court: Correct.
"The Defendant: Okay. Absolutely, Your Honor.
"The Court: I need a guarantee you will come back.
*896 "The Defendant: Yes, that's a guarantee, Your Honor.
"The Court: You're willing to enter a Cruz waiver for the upper term of three years? [¶] ... [¶]
"The Defendant: Provided I get released today.
"The Court: Are you prepared to enter a plea on the charges on the conditions stated by the prosecutor, sir?
"The Defendant: Yes, Your Honor. [H] However, there is one exception. The since the threats or the information is hearsay in the police report concerning those alleged statements of kilhng the President and the sexual favors, I would ask that those be omitted. [¶] I do plead to the charge.
"The Court: Omitted?
"The Defendant: Well, not so much omitted. Those are facts that have not been sustained or proven, is what I am saying.
"The Court: You're saying out of the complaint. [¶] How is the complaint plead [sic]? Is it fact spiecific?
"Mr. Trudgen [prosecutor]: I don't believe so, Your Honor.
"The Court: Let me see the complaint.
"Mr. Trudgen: Although it would be included in the factual basis."
The trial court then advised defendant of his constitutional rights. Defendant entered his plea. The trial court then informed defendant he was to return on April 11. The court continued: "Now, I will release you on your own recognizance pending judgment and sentencing, but I am going to take from you what I call a Cruz waiver, that is, if you do not show up on April 11 ... you agree that the confinement that you will suffer automatically is the upper term of three years in State Prison, sir?" Defendant responded: "Yes, Your Honor, by all means."
Defendant entered a plea of no contest to both counts with the promise he would serve one year in the county jail and not be sent to state prison. He was released from custody pending his sentencing.
Defendant failed to appear for sentencing and the court issued a bench warrant. Thereafter, he was taken into custody and the court sentenced him to three years in state prison. The court also found defendant violated his probation in case No. 03F03671 and sentenced him to a concurrent sentence.
Sentencing took place on April 17, 2006. Defendant filed notices of appeal on December 20 and 27, 2006, and January 31, 2007. Citing Penal Code section 1192.5, defendant argues he must be permitted to withdraw his plea; the court erred in sentencing him for violating a condition that was not part of his plea bargain.

DISCUSSION

Timeliness of Appeal
As a threshold matter, we consider the People's challenge to the timeliness of defendant's appeal. An appeal is taken by filing a written notice within 60 days of rendition of the judgment or making of the order. (Cal. Rules of Court, former rule 30.1(a), renumbered rule 8.308(a) effective January 1, 2007.) As a general rule, a timely notice of appeal is essential to appellate jurisdiction. (People v. Fasanella (1971) 14 Cal.App.3d 1004, 1008, 92 Cal. Rptr. 655.)
However, as defendant points out, we granted his request for constructive filing on December 7, 2006. The order states: "The notice of appeal shall be deemed a timely notice of appeal for all purposes of appellate review." Consequently, *897 defendant's notice of appeal is timely.

Cruz Waiver
Defendant argues that the purported "Cruz waiver" extracted by the trial court was not a valid part of his plea bargain but was a sanction "engrafted" onto the plea. Therefore, defendant contends, he must be allowed to withdraw his plea in accordance with Penal Code section 1192.5 relating to negotiated guilty pleas and cases decided thereunder. (See, e.g., People v. Cruz (1988) 44 Cal.3d 1247, 1249, 246 Cal.Rptr. 1, 752 P.2d 439 (Cruz).)
Penal Code section 1192.5 provides, in pertinent part, as follows: "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot' be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea." The statute further provides that if the court subsequently withdraws its approval of the plea agreement, "the defendant shall be permitted to withdraw his or her plea if he or she desires to do so."
In Cruz, supra, 44 Cal.3d at p. 1249, 246 Cal.Rptr. 1, 752 P.2d 439, the Supreme Court held that a defendant who fails to appear for sentencing does not lose the protections of Penal Code section 1192.5. Though committing "a separate offense of failure to appear ... ([s]ee [Pen.Code,] §§ 1320 and 1320.5)," for which punishment may be imposed, the defendant must still be permitted to withdraw his or her plea if the court insists on imposing additional punishment in excess of that provided by the plea agreement. (Cruz, at p. 1253, 246 Cal.Rptr. 1, 752 P.2d 439.)
However, the Supreme Court added the following caveat, which recognized the ability of a defendant to waive the protections afforded by Penal Code section 1192.5. "We do not mean to imply by this holding that a defendant fully advised of his or her rights under section 1192.5 may not expressly waive those rights, such that if the defendant willfully fails to appear for sentencing the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term. Any such waiver, of course, would have to be obtained at the time of the trial court's initial acceptance of the plea, and it must be knowing and intelligent." (Cruz, supra, 44 Cal.3d at p. 1254, fn. 5, 246 Cal.Rptr. 1, 752 P.2d 439.)
Regrettably, the cases applying the "Cruz waiver" have not always been models of clarity. Thus, a distinction must be drawn between a sentence pursuant to a plea agreement that permits an increased sentence if the defendant does not appear for sentencing as ordered, and a sentence unilaterally imposed by the trial court as a sanction for nonappearance. Where the increase is a part of the plea agreement, Penal Code section 1192.5 is not implicated and there is no need to extract a waiver of its provisions.[2] A defendant cannot complain when sentenced in accordance with his bargain.
The Supreme Court alluded to this point in Masloski, supra, 25 Cal.4th 1212, 108 Cal.Rptr.2d 484, 25 P.3d 681, where the defendant, whose bargained-for sentence was increased because of her failure to appear for sentencing, complained that the trial court failed to advise her of her right to withdraw her plea in the event the court *898 subsequently disapproved the plea agreement. The court acknowledged the trial court's error in failing to advise but concluded: "[T]his error was of no consequence, because the superior court did not disapprove the plea agreement. Rather, when defendant failed to appear on the date set for sentencing, she was sentenced to a term of four years in prison, in accordance with the terms of the plea agreement. The provisions of [Penal Code] section 1192.5 that permit a defendant to withdraw his or her plea if the court withdraws its approval of the plea agreement were not implicated, because the court adhered to the terms of the plea agreement by sentencing defendant to a prison term that did not exceed (and in fact was less than) the maximum sentence authorized by the plea agreement in the event that defendant failed to appear on the date set for sentencing." (Madoski, supra, 25 Cal.4th at pp. 1223-1224, 108 Cal.Rptr.2d 484, 25 P.3d 681.)
On the other hand, an increased sentence as a sanction for willful nonappearance cannot be imposed by the trial court without invoking the protections afforded by Penal Code section 1192.5. This is not to say that such a sanction can only be imposed if made part of a plea bargain. The trial court may impose a sanction for nonappearance if the defendant agrees to the proposal and waives the protections of section 1192.5. The required elements of the waiver are set forth in Cruz, supra, 44 Cal.3d 1247:(1), 246 Cal.Rptr. 1, 752 P.2d 439 the defendant must be fully advised of his or her rights under section 1192.5, (2) the waiver must be express, (3) the waiver must be obtained at the time of the trial court's initial acceptance of the plea, and (4) the waiver must be knowing and intelligent.[3]
Contrary to the People's argument, under no plausible reading of the record could the punishment imposed by the court in this case be considered a part of the negotiated plea. The idea of a sanction for nonappearance as a condition of defendant's release on his own recognizance originated with the court and was pursued by the court without the participation of the prosecutor, as reflected in the following excerpt from the hearing transcript:
"The Court: The offer was to the People. [¶] ... [¶] ... I could require a Cruz waiver. [¶] ... [¶] All right. Mr. Hebert, here's what I will do, because it's the Judge that has to release you. It's not the prosecutor. [¶] ... [¶] If I release you, following your entry of plea, I would require what is referred to as a Cruz waiver."
The court never explained the meaning of a Cruz waiver to defendant, nor was defendant provided with a statement of his rights under Penal Code section 1192.5, including, most importantly, his right to withdraw his plea if the court chose not to sentence in accordance with the plea bargain. Under the circumstances it is impossible to find that defendant's purported waiver of those rights was knowing and intelligent.
*899 We conclude that the enhanced punishment for failure to appear was not part of the plea bargain and that defendant did not knowingly and intelligently waive his right to withdraw his plea in the event that the sentence imposed by the court deviated from the terms of the bargain.

DISPOSITION
The judgment of conviction is reversed and the case remanded to the trial court with directions to set aside defendant's guilty plea, reinstate the original charges, and conduct such further proceedings as may be appropriate.
We concur: DAVIS, Acting P.J., and ROBIE, J.
NOTES
[1] Defendant's surname is misspelled "Herbert" on the abstract of judgment.
[2] Cases so holding include People v. Vargas (1990) 223 Cal.App.3d 1107, 273 Cal.Rptr. 48, People v. Casillas (1997) 60 Cal.App.4th 445, 70 Cal.Rptr.2d 290, and People v. Masloski (2001) 25 Cal.4th 1212, 108 Cal.Rptr.2d 484, 25 P.3d 681 (Masloski).
[3] We note the many cases holding that a sanction for nonappearance cannot be unilaterally imposed by the trial judge. (People v. Morris (1979) 97 Cal.App.3d 358, 158 Cal. Rptr. 722; People v. Barrero (1985) 163 Cal. App.3d 1080, 210 Cal.Rptr. 70; Cruz, supra, 44 Cal.3d at p. 1253, 246 Cal.Rptr. 1, 752 P.2d 439; People v. Jensen (1992) 4 Cal. App.4th 978, 6 Cal.Rptr.2d 201; People v. Murray (1995) 32 Cal.App.4th 1539, 39 Cal. Rptr.2d 7.) However, there is no inconsistency between the holdings in those cases and our holding that such a sanction may be imposed under the procedure outlined in Cruz, supra, 44 Cal.3d at p. 1254, fn. 5, 246 Cal. Rptr. 1, 752 P.2d 439. This is the true Cruz waiver.